ISAAC WEATHERBY *vs.* PHILIP F. SLACK and others.

1. The general rule is, that where a part of the mortgaged premises has been aliened by the mortgagor and a part retained by him, the part retained, as between the mortgagor and his alienee, is primarily chargeable with the debt.

2. The real question in such cases must always be, who, in equity, is bound to pay the debt? The debt is due from the mortgagor to the encumbrancers, and his portion of the mortgaged premises must primarily

bear the burden, unless it be shown that it has, by some means, been shifted upon the portion of the alienees. This fact it is incumbent upon the mortgagor to establish

*Mr. F. Voorhees*, for complainant, cited *Saxton* 413 ; 2 *Halst. Ch. R.* 31; 2 *Green's Ch. R.* 125; 2 *Beas.* 400; 3 *Amer. Law Reg. (N. S.)* 154; *Addison on Contracts* 2; 3 *Green's Ch. R.* 224.

*Mr. Vroom*, for defendants, cited *Engle* v. *Haines*, 1 *Halst. Ch. R.* 186; *Wikoff* v. *Davis*, 3 *Green's Ch. R.* 224.

THE CHANCELLOR. The bill is filed to foreclose a mortgage, given by Slack and wife to Aaron Wills, bearing date on the twenty-third of August, 1851, to secure the sum of five hundred dollars, and by Wills assigned to the complainant.

On the fourth of December, 1851, a second mortgage on the same premises was given by Slack and wife to Sarah N. Bowne, to secure the sum of two thousand dollars, which was subsequently assigned, and is now held by Edward Bowne and Benajah Woodward, trustees, two of the defendants. These mortgages are admitted to be valid and subsisting encumbrances upon the mortgaged premises.

On the sixteenth of August, 1858, Slack and wife executed a third mortgage on the same premises to Samuel K. Wilson, to secure the sum of twenty-five hundred dollars, which was subsequently assigned by him to the firm of Wilson & Bond, and was by them delivered up to the mortgagor to be cancelled, on receiving the conveyance hereinafter mentioned.

On the fourteenth of December, 1861, Slack and wife conveyed a part of the mortgaged premises to Samuel K. Wilson, with covenant of general warranty.

The only question in the cause is, whether that portion of the mortgaged premises thus conveyed to Wilson, or the part retained by the mortgagor, shall be first sold to satisfy the encumbrances.

The general rule is admitted to be, that where a part of the mortgaged premises has been aliened by the mortgagor, and a part retained by him, the part retained, as between the mortgagor and his alienee, is primarily chargeable with the debt. *Shannon* v. *Marselis, Saxton* 413; *Wikoff* v. *Davis*, 3 *Green's Ch. R.* 224; *Winters* v. *Henderson*, 2 *Halst. Ch. R.* 31; *Gaskill* v. *Sine*, 2 *Beas.* 400; 2 *Story's Eq. Jur.*, § 1233 *b*; 1 *Wash. on Real Prop.* 570.

The real question in such cases must always be, who in equity is bound to pay the debt? The debt is due from the mortgagor to the encumbrancers, and his portion of the mortgaged premises must primarily bear the burden, unless it be shown that it has, by some means, been shifted upon the portion of the alienees. This fact, it is incumbent upon the mortgagor to establish.

The mortgagor, by his answer, alleges that the deed to Samuel K. Wilson for a part of the mortgaged premises, was executed to him at the request of the firm of Bond & Reading, (the firm being composed of Samuel K. Wilson, Joseph W. Bond, and Franklin Reading,) and that it was well understood between himself and the said Samuel K. Wilson, on behalf of himself and the other parties, that the property conveyed by the said deed was to be by them accepted, and the same was by them accepted, subject to the payment of the two mortgages upon the premises, set out in the complainant's bill; and he insists that Wilson, having accepted the said deed for a part of the said mortgaged premises, and having received the same in full payment and satisfaction of the mortgage of said firm, which was thereupon given up to be cancelled, and subject to the payment by Wilson, or by the said firm, of the said two mortgages, the balance of the mortgaged premises now held by the mortgagor, is not liable to pay any part of the mortgages, but that the mortgagor, by virtue of the agreement aforesaid, is entitled to hold the same free and discharged therefrom.

The grantees of the mortgagor, by their answer, deny that they, or either of them, ever agreed to accept a conveyance

of a part of the said mortgaged premises, subject to the payment of the mortgages thereon, or that such deed was accepted in payment of their debt. They allege that the firm holding a mortgage upon the whole of said premises, and a bill having been filed for the foreclosure thereof, the mortgagor, then being the owner in fee of the whole of said premises, proposed to convey the same to the complainants, if they would discontinue the suit, and permit him to occupy the premises one year, rent free. And it was thereupon agreed between the parties, that the said Wilson and Bond should discontinue their proceedings to foreclose, and permit the mortgagor to occupy the premises for one year, free of rent, provided he would pay the taxes, insure the premises against fire, and, together with his wife, execute a deed for the mortgaged premises to the said firm, or to such person, for their use, as they should designate ; and that the mortgaged premises subject to the encumbrances, would be received in satisfaction of their mortgage. They further allege that the deed subsequently made by the mortgagor to Wilson, was delivered to one of the firm of Bond and Wilson, under the agreement then made, and was accepted, and the bond and mortgage surrendered, upon the understanding and belief, and under the representation of the mortgagor, that the deed covered the whole of the mortgaged premises.

The issue made by the pleadings is, whether the grantees of Slack, the mortgagor, agreed to accept, and did accept, a deed for part of the mortgaged premises in payment of their mortgage, and upon the condition of their paying the prior mortgages upon the premises. The claim of the mortgagor to make a debt due from himself an encumbrance upon the land of his grantees, depends upon the establishment of that fact to the satisfaction of the court. It is not so established. On the contrary, I think the decided weight of the evidence is, that Slack agreed to make, and the grantees to accept, a conveyance, not for a part, but for the whole of the mortgaged premises, and that the deed actually delivered was not de-

livered in good faith, or in accordance with the agreement and understanding of the parties.

The mortgaged premises are an ordinary town-lot, consisting of a dwelling-house and lot in Mount Holly, fronting forty-four feet five inches on High street, and extending in depth one hundred and eighty-eight feet one inch; the dwelling-house occupying the front of the lot, and a stable standing on the rear. The deed to Wilson conveys a lot one hundred and sixty-eight feet one inch in depth, thus excluding twenty feet of the rear of the lot, upon which the stable stands. The description of the premises conveyed by the deed, is identical with that covered by the mortgage, as to course and distance, excepting in the length of a single line, so that the variation, even if the deed had been examined, would not be very likely to arrest attention. Nor is there anything upon the face of the deed, indicating that it was for a part only of the lot as held and occupied by the mortgagor. The evidence shows that the part of the lot not included in the deed, is worth five hundred dollars, and that the division would injure the value of the entire premises to a still larger amount. That mortgagees who had commenced proceedings for foreclosure should arrest the suit, and allow the mortgagor to continue a year in possession, rent free, upon receiving a title for the premises without the expense of litigation, is neither incredible, nor improbable. But that they should at the same time consent to receive title for a portion of the premises, by which their security was seriously impaired, is not probable. The mortgagees severally deny that they ever made such an agreement. They all state that they understood the deed to cover the entire mortgaged premises, and they all deny that a word was ever said in the course of the negotiation, about conveying less than the whole of the mortgaged premises. The partner by whom the negotiation for the conveyance was principally conducted, states that the contract was made expressly for the entire lot. But the testimony of the mortgagor himself is decisive upon this point. He says that he proposed to convey the house; that nothing

was said between himself and the grantees as to the quantity of land he should convey. He drew the deed himself, and included in the description so much land as he deemed sufficient to pay what he owed them. He does not pretend that the attention of the grantees was ever called to the description as he had drawn it; that he ever intimated that it included only a part of the lot held and occupied with the house; or that they supposed or believed that it was other than a conveyance of the entire lot covered by their mortgage. The evidence incontestably proves that the grantees negotiated for, and expected to receive, a deed for the house and lot as they were held and occupied by the grantor. It is incredible that they should have consented to surrender a bond and mortgage upon a town house and lot, and receive in return a conveyance for the house alone, or so much land only as the grantor saw fit to convey.

The land not conveyed by the grantor is chargeable with the mortgage debts, and must be sold first in order. There must be a reference to ascertain the amount due upon the mortgages.